## Budge vs. Mott and another.

SHIPPING.    *What act of master inconsistent with his employment.*

1.  Where a vessel was arrested by process in admiralty issued at the suit of the master and another person, and her voyage and employment interrupted until she was released by her owners: *Held*, that this act of the master terminated his employment as such, at the election of the owners.

2.  The master, having been made one of the libellants of his own vessel, and, with knowledge of the fact, having done nothing towards dismissing the suit or releasing the vessel, cannot be heard to deny that he was a party to the proceeding, on the ground that he professed disapproval of it.

APPEAL from the Circuit Court for *Milwaukee* County.

In March, 1875, defendants, as owners of a vessel, employed the plaintiff, *George Budge*, to sail it as master on the great northern lakes, for the season of 1875, for a specified sum. Plaintiff served as such master until July 1, 1875, when defendants discharged him from their service. It appears that they paid him for his services until the date of his discharge, at the stipulated rate; but he sought in this action to recover the remainder of the sum agreed to be paid for the season; alleging, among other things, that he was discharged without fault on his part.

On this trial, defendants put in evidence a libel against the vessel, filed June 24, 1875, in a federal district court, which, after the signature of the proctors, purported also to be signed by the present plaintiff as well as by his brother, Gilbert Budge, with a verification attached signed by Gilbert Budge. The libel recites that "Gilbert Budge and *George Budge* exhibit this their libel;" avers that the libellants are sole owners of the vessel, and are deprived of the possession by means of certain fraudulent representations and certain proceedings therein set forth; and prays for a warrant of arrest against the vessel, and process of monition for *John T.*

Budge vs. Mott and another.

*Mott* (one of the present defendants), and all others concerned, etc. An undertaking for the costs, filed at the same time, and purporting to be signed by the present plaintiff as well as by Gilbert Budge and a third person, was also put in evidence. When the libel was exhibited, process was issued thereupon, and the marshal took possession of the vessel, which was released a few days afterward upon bond filed by the owners. The testimony for defendants also tended to show that the libel was filed with the knowledge and consent of the plaintiff; and that at the time of his discharge, the fact that he had united with Gilbert Budge in exhibiting such libel was assigned to him as the reason of such discharge.

Plaintiff introduced evidence to show, among other things, that the libel was filed without his approval or consent and against his remonstrances, and that he objected to it because he feared that it would lead to his discharge from defendants' service; and he testified that he never signed his name to the libel or undertaking, and did not know that it was so signed before the trial of the present action.

Under the direction of the court, the defendants had a verdict; and plaintiff appealed from the judgment.

For the appellant, there were briefs by *H. H. & G. C. Markham*, with *E. P. Smith*, of counsel, and oral argument by *Mr. Smith*. They contended that, upon the evidence in the case, the jury, if the questions of fact had been submitted to them, might have found that plaintiff never signed the libel, or assented to or approved of the filing of the same; that he did not know of its contents; that when his attention was called to it by defendant's agents, he assured such agent that he had nothing to do with it; and that defendants nevertheless, without inquiry into the fact, discharged him from their employment. Upon these facts plaintiff would have been entitled to a judgment in his favor. Plaintiff testifies that, though he requested one Capt. Vance to notify the owners of the filing of the libel, knowing from his brother that it was

to be filed, yet he did not know the particular contents either of the libel itself or of the telegram sent. The only evidence, other than the testimony of defendant's agent, to show that plaintiff knew the contents of the libel, was the possession of the vessel by the marshal. No papers were served on plaintiff in the proceedings against the vessel, the law requiring simple publication; so that there was nothing in the fact of possession by the marshal that would necessarily notify plaintiff of the contents of the libel.

*Wm. P. Lynde*, for respondents:

The libel was filed by plaintiff's lawyers in the name of plaintiff and Gilbert Budge; the vessel was seized on a monition issued on that libel; plaintiff's name appears to be signed to the libel and also to the stipulation for costs; he caused a telegram to be sent by Capt. Vance to the owner stating that he and his bother had libeled the vessel; he told the agent, when the latter came on to release the vessel, that he had been overpersuaded by Gilbert; and he made no proposition to dismiss the suit as to himself, but allowed it to go on, compelling the owner to bond the vessel. Under such circumstances the owner was fully justified in discharging him from his employment. If the libel had been filed without plaintiff's knowledge or consent, still, when the vessel was seized and the monition was posted on the vessel, showing that she was seized in a suit brought by *George Budge* and Gilbert Budge, and when he dictated the telegram notifying his employer of the suit, he certainly did not know that his name was used as libellant; and if he did not intend to approve the suit, he should at once have disclaimed, and have had the libel dismissed as to himself. This was in his power at any time. *Noonan v. Orton*, 31 Wis., 272; *Lowenstein v. Gildenwell*, 7 Cent. L. J., 168.

RYAN, C. J. The position of master of a ship is one of great trust, power and responsibility. In all emergencies,

physical and moral, it is his peremptory duty to protect, as far as it may lawfully be done, his vessel and the interest of his owners in it. Indeed, his power and duty go so far that he may, in some emergencies, pledge his vessel by bottomry, to secure or relieve her from arrest. In case of arrest, or threatened arrest, it is his duty to do all that he may properly do, on behalf of the vessel and her owners, to free her from arrest, so that she may prosecute her voyage or employment; and in the performance of these duties the master is held to a high degree of care and integrity. Abbott's Shipping, 167; 1 Parsons' Shipping, 140; 2 id., 3; *The Aurora*, 1 Wheat., 96; *Smith v. Gould*, 4 Moore P. C., 21; *The Gauntlet*, 3 W. Robinson, 82.

Here the vessel, of which the appellant was master, was arrested by process in admiralty issued at the suit of himself and another, and her voyage or employment interrupted until she was released by her owners. It may be that the master and his coplaintiff in admiralty had a valid claim against the vessel or her owners. It may be that the master was not designedly guilty of bad faith to his owners by suffering his name to be used in the proceeding to arrest the vessel. Of that it is unnecessary to express an opinion. But it is quite certain that, rightfully or wrongfully, the appellant took a course inconsistent with his employment and duties as master, stopping the employment of the vessel with which he was charged, and terminating his own employment as master at the election of his owners. He could not by his own act, in his own behalf, stop the navigation of the vessel, and at the same time be entitled to wages for navigating her. As far as it lay with him, he rescinded his contract of employment as master by putting it out of his own power to perform it.

It is idle to pretend that the appellant was not a party to the proceeding in admiralty against the vessel because he professed disapproval of the suit. The suit was brought in his name and his coplaintiff's, and, being a party of record, he

cannot be heard to say that he was not a party in fact. He was one of the libellants of his own vessel in admiralty, as he must have been fully advised, if he had no other notice, by the monition served upon him; and he did nothing towards dismissing the suit or releasing the vessel. Whatever differences of opinion or of policy in the matter there may have been between himself and his coplaintiff, his name was used as a plaintiff of record. He suffered his name to be so used, and he was responsible for the arrest and detention of his vessel in the suit in admiralty.

The view of the case taken by the learned judge of the court below was quite right, and the judgment below is affirmed.

*By the Court.* — Judgment affirmed.